AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Hampshire

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

BUCCAL DNA SAMPLE FROM FIVE INDIVIDUALS DESCRIBED IN AFFIDAVIT

Case No. 26-mj-265-01-AJ

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Buccal DNA samples from five individuals, natural persons, described further in the attached affidavit

located in the ______ District of New Hampshire, there is now concealed *(identify the person or describe the property to be seized)*:

Buccal DNA samples from five individuals, natural persons, described further in the attached affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1201; 21 USC § 846 | Kidnapping (conspiracy); Conspiracy to distribute controlled substances |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: ______ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Paul W. Mullen
*Applicant's signature*

Paul W. Mullen, FBI, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: September 24, 2026

*Judge's signature*

City and state: Concord, New Hampshire

Andrea K. Johnstone, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF SPECIAL AGENT PAUL W. MULLEN IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT**

I, Paul Mullen, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. Since November 2008, I have been employed as a Special Agent of the Federal Bureau of Investigation ("FBI"). I am currently assigned to the Boston Division, Bedford, New Hampshire Resident Agency. I investigate criminal matters and primarily focus on violent crimes, often in conjunction with other law enforcement officers from local, county, state, and federal agencies throughout the state of New Hampshire and elsewhere. Prior to being a Special Agent with the FBI I worked for approximately a year as a Trooper with the New Hampshire State Police.

3. The information contained within this affidavit is based upon my training, experience, and investigation, as well as information that has been conveyed to me by other law enforcement officers and witnesses. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below, including other law enforcement officers involved in this investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation.

## II. PURPOSE OF AFFIDAVIT

4. I am submitting this affidavit in support of an application for a search warrant to search and seize buccal DNA samples from Tyron HARRIS (DOB: [redacted]), Damarcus BONNER (DOB: [redacted]), Nicole PALARDY (DOB: [redacted]), Jessenialyz JONES (DOB: [redacted]), and Sheldon STOCKER (DOB [redacted]), as evidence of violating Title 18, U.S.C., Section 1201 (kidnapping conspiracy), Title 21, U.S.C., Section 841 (drug trafficking), and Title 21, U.S.C., Section 846 (drug trafficking conspiracy). HARRIS, PALARDY, and BONNER are currently in federal custody in New Hampshire, and JONES and STOCKER are in Vermont State custody, pending appearance in federal court in New Hampshire.

## III. PROBABLE CAUSE

5. On or about January 24, 2026, the Greenfield, Massachusetts Police Department received a report of a possible kidnapping from INDIVIDUAL 1. INDIVIDUAL 1 reported that he had been contacted by VICTIM 1, an adult female and the mother of INDIVIDUAL 1's child, and that VICTIM 1informed him that she was being held against her will and that she needed money to pay her captors to prevent further harm to her.

6. INDIVIDUAL 1 advised law enforcement that he received images sent from VICTIM 1's phone that showed VICTIM 1's feet bound and burn marks on her abdomen. INDIVIDUAL 1 noted that he observed others in a FaceTime video with VICTIM 1's phone and that one of the apparent captors carried a silver handgun.

7. Law enforcement was able to obtain location information for VICTIM 1's phone which indicated that it was in the area of a single-family home on Randall Hill Road in Springfield, Vermont (the "RESIDENCE").

8. On or about January 24, 2026, Springfield Police officers arrived at the RESIDENCE and, after learning that there were multiple occupants within, used a loudspeaker to order all occupants out of the building. VICTIM 1 exited the building.

9. VICTIM 1 told police she had been kidnapped from Claremont, New Hampshire by DAMARCUS BONNER and TYRON HARRIS and explained that they were still within the RESIDENCE. HARRIS and BONNER later emerged from the RESIDENCE. NICOLE PALARDY, JESSENIALYZ JONES, SHELDON STOCKER, and another adult and one minor also emerged from the building.

10. VICTIM 1 further explained that she had been tortured, restrained, and held captive for money as HARRIS and BONNER believed she stole drugs or money from them and wanted to be paid back.

11. VICTIM 1 was transported to the hospital for treatment. While there she provided a statement to law enforcement. She reported that on January 23, 2026, she was at a residence in Claremont, New Hampshire, when she made plans with PALARDY via cellphone using the Facebook Messenger application to purchase drugs. VICTIM 1 further reported that, after communicating with PALARDY via electronic message, she met with PALARDY in Claremont while PALARDY was standing outside of a black pickup truck. As VICTIM 1 approached the truck, she observed the rear door of the truck open and saw BONNER and HARRIS inside. VICTIM 1 reported that after seeing HARRIS and BONNER she entered the truck against her will. She recognized the driver of the truck as JESSE EMERSON.

12. VICTIM 1 stated that prior to meeting with PALARDY, she had been contacted by HARRIS, via Facebook Messenger or another messaging application, who accused her of stealing drugs or money from him.

13. VICTIM 1 reported that at the RESIDENCE, JONES bound her hands and feet with duct tape and struck her face and body. She also reported that she was blindfolded, and a towel was placed over her face and her captors poured hydrogen peroxide over the towel. VICTIM 1 also reported that a knife was heated up and pressed against her body inflicting burn marks on her abdomen and back.

14. VICTIM 1 reported that BONNER and HARRIS took her phone and accessed her Facebook Messenger account requesting money and threatening that VICTIM 1 would be seriously injured. One of the individuals contacted was INDIVIDUAL 1.

15. VICTIM 1 explained that she was restrained and not free to leave the RESIDENCE and that she was threatened by both HARRIS and BONNER while at the RESIDENCE. She also observed a silver handgun brandished by HARRIS and BONNER.

16. While speaking with VICTIM 1, law enforcement was able to observe VICTIM 1's injuries, which included burn marks on her back and abdomen and duct tape marks on her wrists consistent with her account.

17. A subsequent search of the RESIDENCE revealed a silver handgun consistent with both VICTIM 1 and INDIVIDUAL 1's description, a quantity of heroin/fentanyl which appeared to be packaged for distribution, and other illegal drugs.

18. The search of the RESIDENCE further revealed duct tape formed as if it was restraining someone and located in the basement bedroom where VICTIM 1 described she was held captive. In the same room was a large knife and torch and a bottle of hydrogen peroxide—all consistent with VICTIM 1's account.

19. VICTIM 1 also stated that another adult ("INDIVIDUAL 2") who was present at the RESIDENCE was bound and tortured on suspicion of stealing drugs from the defendants.

INDIVIDUAL 2 gave a statement to police corroborating that she was restrained by the defendants on suspicion of stealing their drugs. Law enforcement was able to observe wounds on INDIVIDUAL 2 that were consistent with having been burned by a heated knife.

20. Springfield Police searched the RESIDENCE and seized a number of items. In addition to the silver handgun, police located duct tape, a lighter torch, and other items.

21. FBI took custody of these items from Springfield Police. An analysis by the FBI laboratory of the silver handgun revealed DNA originating from five individuals and is suitable for comparison purposes. Laboratory analysis of the lighter torch revealed DNA originating from three individuals and is suitable for comparison purposes.

## V. **BUCCAL SWAB REQUEST**

22. Based on the information above, I am requesting a warrant to obtain buccal DNA samples from HARRIS, BONNER, PALARDY, JONES, and STOCKER.

23. Based on my training and experience, I am aware that to obtain a comparative DNA sample from a subject, I need to use a buccal swab to collect a sample from the inside cheek area of the subject’s mouth. This procedure is minimally invasive and does not cause any harm to the subject. After obtaining the DNA samples from HARRIS, BONNER, PALARDY, JONES, and STOCKER, I will submit the sample to a certified laboratory for analysis and comparison with the recovered samples discussed above.

## VI. CONCLUSION

24. I submit that there is probable cause to believe that the requested DNA samples will provide evidence of violations of Title 18, U.S.C., Section 1201 (kidnapping), Title 21, U.S.C., Section 841 (drug trafficking), and Title 21, U.S.C., Section 846 (drug trafficking conspiracy).

Respectfully submitted,

/s/ Paul W. Mullen
Paul W. Mullen
Special Agent, FBI

Subscribed and sworn to before me on September 24, 2026.

Hon. Andrea K. Johnstone
United States Magistrate Judge
District of New Hampshire